JOSEPH A. BRODERICK, as Superintendent of Banks of the State of New York, Appellant, *v.* NORMANDIE NATIONAL SECURITIES CORPORATION, Respondent, Impleaded with RALPH FANCHER and Others, Copartners and Joint Venturers Doing Business under the Name and Style of FANCHER & Co., Defendants.

First Department, February 23, 1934.

*Arthur Ofner* of counsel [*Harold N. Cohen* and *Edward Weitz* with him on the brief; *Carl J. Austrian,* attorney], for the appellant.

*Samuel Poses* of counsel [*Poses, Katcher & Driesen,* attorneys], for the respondent.

MARTIN, J. The Superintendent of Banks having taken possession of the business and property of the Bank of United States levied an assessment of $25 per share against each stockholder of the bank. The defendant Fancher & Co. appeared on the stock ledger as the owner of 683 shares of stock and was assessed the sum of $17,075, notice of which was given to it by the Superintendent of Banks pursuant to section 80 of the Banking Law.

The complaint in the present action, after setting forth the necessary preliminary facts, then alleges:

" 10. * * * These demands, so sealed and addressed and postpaid, were, on July 1, 1932, mailed to each said stockholder,

including the defendants, Fancher & Co., at the General Post Office, in the Borough of Manhattan, City of New York.

"11. A copy of the demand so mailed to defendants, Fancher & Co., is hereto annexed, marked 'Exhibit A' and made a part hereof.

"12. Upon information and belief, the defendants, Fancher & Co. on and prior to December 11, 1930, and thereafter held and now hold said stock as the agents and representatives in behalf and for the benefit of the defendant, Normandie National Securities Corporation, and such corporation was at all such times the legal and equitable owner of the 683 shares of capital stock appearing upon the stock ledger of The Bank of United States in the name of the defendants, Fancher & Co."

The Superintendent of Banks concedes that a notice of the assessment was never mailed to the Normandie National Securities Corporation.

The questions here involved are whether the plaintiff may maintain this action against the Normandie National Securities Corporation without having sent a notice of assessment and demand to it and whether, by virtue of section 902 of the Civil Practice Act, an attachment is permissible in such a case.

The appellant says that neither section 80 nor section 120 of the Banking Law requires a demand upon a stockholder whose name does not appear upon the stock ledger of the bank. Section 80 prescribes the method of enforcement of assessment and provides in part as follows: " Whenever a liability of stockholders for the amount of their respective shares of any such corporation exists * * * he [Superintendent] may enforce the individual liability of such stockholders in whole or in part. In case he determines to enforce such liability, he shall make demand in writing upon such stockholders by causing such demand to be enclosed in sealed envelopes addressed and mailed, postage prepaid, to said respective stockholders at their last known places of address as the same appear upon the stock ledger of such corporation or at their last known address if no address appears in said ledger."

Section 120 of the Banking Law provides in part: " The term ' stockholder ' as used in this section shall apply to:

"1. Such persons as appear by the books of the bank to be stockholders;

"2. Every owner of stock, legal or equitable, although the same may be on such books in the name of another person."

The respondent claims that a demand upon and notice to one sought to be held liable as a stockholder is a condition precedent to the maintenance of an action against him by the Superintendent

of Banks for a stock assessment; that the word " stockholder," as used in sections 80 and 120 of the Banking Law, applies to both record and equitable owners of stock and that the respondent as the equitable owner is entitled to the notice.

The word " stockholder," as used in section 120 of the Banking Law, has been expressly confined to (1) such persons as appear by the books of the bank to be stockholders; (2) every owner of stock, legal or equitable, although the same may be on such books in the name of another person. The purpose of the Legislature evidently was to give a concise definition of what was meant by the word " stockholder " when dealing with section 120 of the Banking Law. If it had been intended that this same definition of the word " stockholder " was to apply to all of the sections of the Banking Law, and especially to section 80, the Legislature would have so provided. That it does not apply to section 80 seems to be clear from the wording of that section.

Section 80 of the Banking Law provides that the Superintendent of Banks may enforce payment of the individual liability of a stockholder, the means of giving notice thereof and the effect of failure to pay at a fixed time. It also provides that in case he determines to enforce such liability, he shall make demand in writing upon such stockholders by causing such demand to be enclosed in sealed envelopes, addressed and mailed postage prepaid, to the said respective stockholders *at their last known places of address as the same appear upon the stock ledger of such corporation or at their last known address if no address appears in said ledger.*

This section clearly was intended to apply to those whose names appear upon the stock ledger of such bank. At the time this notice is given, the Superintendent of Banks, in all probability, would have no knowledge as to many of the actual owners of the stock and their names and addresses would not, in many instances, appear on the ledger.

If we follow the settled rules of statutory construction and give to the language of section 80 its obvious import, it imposes a duty on the Superintendent to notify a specific class of stockholders, only those whose names appear in a particular corporate record, and at places or addresses therein recorded. This necessarily excludes, either expressly or by necessary implication, all stockholders outside of the class therein specified.

A somewhat similar question was before the court in *Matter of Societa, etc., Di Savoia* v. *Broderick* (260 N. Y. 260). The Court of Appeals there had before it the interpretation of section 72 of the Banking Law, which required the giving of notice to creditors to present claims. The court said: " Only to ' persons whose names

appear as creditors upon the books of the corporation ' must a notice be mailed. * * * When the statute says that the Superintendent ' shall.cause said notice to be mailed ' to all creditors ' whose names appear * * * upon the books,' we think the intent clear that the notice must be ' mailed ' with an appropriate address upon the envelope; that since the books furnished no such address and the Superintendent was not aware thereof, the requirement of mailing did not apply."

It is pointed out that if demand upon non-record holders was intended as a condition precedent to liability or to the enforcement of the assessment against them, one would naturally expect to find some specific reference by the Legislature to this subject in one of these two sections.

Section 80 refers to notice to stockholders of record only, without words indicating any qualification or enlargement and it is the only section of the Banking Law dealing with the subject of demand.

Section 120 of the Banking Law, so far as material to this appeal, merely defines the general scope and incidence of the assessment liability by designating the persons against whom the assessment may be enforced. Its language furnishes no indication or intention to deal with the procedural matters provided for in section 80 of the Banking Law, or to extend the application of such procedure to the unregistered legal or equitable stockholders whose liability it declares.

It is apparent that other obstacles and difficulties would arise if notice be required to non-record owners of stock. Many stockholders whose names appear upon a stock ledger may die or become bankrupt. Under respondent's theory, in such instances, notice to the record holder as registered upon the stock ledger would, in view of the devolution of title or liability, be ineffectual as notice to the executor or trustee in bankruptcy. This would entail a complete investigation into the status of each person upon the stock ledger before the giving of notice and the integrity of the stock list for the purpose of assessment enforcement as designed by the statute would be destroyed.

Authority for the granting of the warrant of attachment in this case may be found in section 902 of the Civil Practice Act, taken from section 635 of the Code of Civil Procedure. In *Gutta Percha & R. Mfg. Co.* v. *Mayor, etc.* (108 N. Y. 278), the court said: " Two kinds of contracts are contemplated by section 635, express contracts, which are such as are voluntarily made by the parties thereto, and implied contracts which, though not expressly made by the parties, are made by the law when it, enforcing a sound morality and a wise public policy, acting upon principles of equity

and justice, imposes upon a party an obligation to pay a debt or discharge a duty."

In *Howarth* v. *Angle* (162 N. Y. 179, at p. 187) the court said: " While the liability is, for convenience, frequently called statutory, because the statute, which is the constitution of the bank, affixed the obligation to the ownership of stock, it is in fact contractual and springs from an implied promise. There is no substantial difference between the liability for an unpaid balance on a stock subscription, which is an express contract to take stock and pay for it (*Stoddard* v. *Lum*, 159 N. Y. 265), and the liability for the unpaid deficiency of assets assumed by the act of becoming a member of the corporation through the purchase of stock, from which a contract is implied to perform the statutory conditions upon which stock may be owned. (*Richmond* v. *Irons*, 121 U. S. 27, 55.) "

The liability of the respondent is contractual. An attachment was, therefore, properly granted.

The judgment and order appealed from should be reversed, with costs, and the motion to dismiss the complaint and to vacate the attachment denied, with ten dollars costs.

FINCH, P. J., O'MALLEY and TOWNLEY, JJ., concur.

Judgment and order reversed, with costs, and motion denied, with ten dollars costs.